IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YULIA S., et al.,**<br><br>  *Plaintiffs,*<br><br>v.<br><br>**HATBORO-HORSHAM SCHOOL DIST.,**<br><br>  *Defendant.* | **Case No. 2:21-cv-02011-JDW** |

### MEMORANDUM

Congress has decided to channel cases about a student's right to a free, appropriate public education to administrative hearing officers in the first instance. And district courts must give due weight to hearing officers' findings in cases under the Individuals with Disabilities in Education Act. The Plaintiffs in this case pursued such a claim and lost. Now, they want a fresh bite at the apple, unburdened by any deference to the Hearing Officer's findings. They offer two reasons to permit the Court to conduct a *de novo* review, but the Court rejects both.

*First*, claims about a student's education that arise under Section 504 of the Rehabilitation Act of 1973 or the Americans with Disabilities Act are subject to the same modified *de novo* review as claims under the IDEA because Congress requires them to go through the same administrative process. Although Plaintiffs suggest that Congress exempted those claims from modified *de novo* review in 20 U. S. C. § 1415(l), the Court reads the statute differently. *Second*, Plaintiffs'

complain about the way the District's lawyers conducted themselves during administrative proceedings. But there are a bevy of problems that mean they likely cannot prevail on that claim, and certainly that prevent the Court from ruling in their favor as a matter of law. The Court will therefore deny Plaintiffs' Motion for Partial Judgment on the Pleadings.

I.   BACKGROUND

   A.   The Family's Dispute(s) With The District

Plaintiffs Yuliya S. and Alexei P. ("Parents") filed this action individually and on behalf of their son A. P. , who they allege has a variety of conditions that require support in school. He and his parents reside in Hatboro-Horsham School District. Parents have a contentious relationship with the District arising out of disputes concerning A. P. 's older brother.

In June 2018, A. P. 's mother met with the principal of the school that A. P. was scheduled to attend the following fall. Parents claim that they alerted the principal that A. P. had special needs, but no one from the District responded. The District claims that it had no obligation to respond because Parents did not include information corroborating their assertions about A. P.

In June 2019, Parents again emailed the principal of the elementary school and said that Parents intended to place A. P. in a private school at District expense. The principal forwarded the email to the District's Director of Special Education. Parents complain that the District again failed to respond, but the District says it still didn't have to respond. Parents sent A. P. to private school for

2

the 2019-2020 school year. The same pattern played out in advance of the 2020-2021 school year, and Parents enrolled A. P. at the same private school for that year.

### B.     The Due Process Hearing

Parents filed an administrative complaint against the District on July 17, 2020. A Pennsylvania Special Education Due Process Hearing Officer then presided over an administrative proceeding. During that proceeding, each party accused the other of misconduct. Parents complain that the District's counsel asked about outside events and litigation, challenged Parents' assertions, and accused Parents, their attorneys, and their expert of lying. (ECF No. 1 at ¶¶ 77-152.) And the District's counsel accuses Parents of introducing an "intentionally deceptive exhibit." (ECF No. 10 at ¶ 144.)

The Hearing Officer noted this conduct. She explained that that the "relationship between the parties is strained" and that the "circumstances of that discord were revealed [throughout the hearing] with veiled references to dishonesty, unprofessional conduct, and scripted litigation." (ECF No. 11-3 at 9.) She explained that while she did not want to be "distracted" with details about other litigation between the parties, "counsel could not resist peppering their questions, objections, and responses with specks of suspicion about the motives of testifying witnesses." (*Id.*) Parents attribute this conduct all to the District's counsel, though the Hearing Officer did not say that. The Hearing Officer noted

that this conduct interfered with her ability to assess witnesses' credibility, but it "did not eradicate it." (*Id.*) She issued a decision in the District's favor.

### C. Procedural History

On April 30, 2021, Parents filed this case to challenge the Hearing Officer's decisions. They allege that the District violated the IDEA, the Rehab Act, the ADA, and 42 U. S. C. § 1983. Parents filed a Motion For Partial Judgment On The Pleadings to determine what standard of review applies to their claims, and it is now ripe for a decision.

## II. STANDARD OF REVIEW

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c)."[J]udgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F. 3d 218, 221 (3d Cir. 2008) (quotation omitted). To make this determination, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (same). When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293, 305 (2d Cir. 2021); *see also Beal v. Missouri Pac. R. R. Corp.*, 312 U. S. 45, 51 (1941) (when a court grants judgment on

the pleading for the respondent, the defendant's "denials and allegations of the answer which are well pleaded must be taken as true").

This Court may consider an undisputedly authentic document that is "integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F. 3d 251, 256 n. 5 (3d Cir. 2004), as amended (Mar. 8, 2004) (quotations omitted). The Office of Dispute Resolution provided a copy of the administrative record to the Court. Neither party disputes its accuracy; the record is attached in truncated form to the Complaint; and Parents reference portions of the administrative record in the Complaint. The Court may therefore consider it.

### III. ANALYSIS

#### A. *De Novo* Review Of Claims Under ADA And Rehab Act

District courts review administrative decisions under the IDEA using a modified *de novo* standard of review. *See D. S. v. Bayonne Bd. of Educ.*, 602 F. 3d 553, 564 (3d Cir. 2010). When an individual files a civil action under the ADA or the Rehab Act that seeks "relief that is also available under [the IDEA]," the individual must first exhaust the IDEA's administrative procedures. 20 U. S. C. § 1415(l); *see also Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). But the Third Circuit has not decided whether the modified *de novo* standard of review applies to ADA and Rehab Act claims that a plaintiff presented to a hearing officer pursuant to the IDEA. The Court concludes that the standard applies.

The modified standard comes from the Supreme Court's decision in *Bd. of Educ. Of Hendrick Hudson Central Sch. Dist. , Westchester Cty. v. Rowley*, 458 U. S. 176, 206-07 (1982). In that decision, the Court concluded that the "very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought." *Id.* at 206. The Court also explained that the IDEA's requirement that a reviewing court received the records of the due process hearing "carries with it the implied requirement that due weight shall be given to these proceedings." *Id.*

Like IDEA claims, Congress requires claims under the ADA and the Rehab Act to go before a hearing officer in a due process hearing as long as the "parties could have asserted the claims under the IDEA." *Batchelor v. Rose Tree Media Sch. Dist. ,* 759 F. 3d 266, 273 (3d Cir. 2015); *see also* 20 U. S. C. § 1415(l). Because Congress imposed the same administrative requirements on claims under the IDEA, the ADA, and the Rehab Act, the Court can presume that Congress focused on the same procedural protections for all of those claims. And that means that the Supreme Court's decision in *Rowley* should apply with equal force to claims under the ADA and the Rehab Act when those claims went before a hearing officer.

To hold otherwise would permit a trial court to ignore administrative findings about those claims, even after Congress required parties to present the claims to an administrative tribunal and after Congress required the parties to submit the

record of administrative proceedings to the district court. That outcome would diminish, if not eliminate, the value of the administrative process that Congress has created and would make no sense. Of course, Congress is free to adopt statutes that make no sense. But courts should not be quick to assume that Congress did so. *See U. S. v. Fontaine*, 697 F. 3d 221, 228 (3d Cir. 2012) (courts should adopt interpretations that avoid absurd results). Instead, the Court will give "due weight" to those underlying administrative proceedings to avoid "substitute[ing] its own notions of sound educational policy for those of local school authorities." *S. H. v. State-Operated Sch. Dist. of City of Newark*, 336 F. 3d 260, 270 (3d Cir. 2003).

Parents argue that Section 1415(l) requires the Court to apply a *de novo* standard of review, but their argument does not account for the language or history of the statute. The statute provides, "Nothing in **this Chapter** shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution . . . ." 20 U. S. C. § 1415(l) (emphasis added). But the IDEA does not require the modified *de novo* standard of review. It is a judge-made rule. So a court's application of the modified *de novo* standard to claims under the ADA and Rehab Act does not run afoul of the text of Section 1415 because it does not impose a limit that arises in that statutory chapter. It is true, of course, that the Supreme Court's decision in *Rowley* stems from the Court's understanding of Congress's intent in adopting the IDEA. But while the Supreme Court fashioned the rule based on provisions in the IDEA, the rule does not come from the text of

7

the IDEA, and Section 1415(l) does not bar its application. *See Jama v. Immigration and Customs Enforcement*, 543 U. S. 335, 342 (2005) (courts do not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply").

Of note, the Supreme Court decided *Rowley* in 1982. Congress adopted Section 1415 in 1986, as part of the Handicapped Children's Protection Act of 1986, 100 Stat. 796, in response to the Supreme Court's decision in *Smith v. Robinson*, 468 U. S. 992 (1984). Yet Congress limited Section 1415(l) to provisions in the IDEA and did not address the modified *de novo* standard of review. From that omission, the Court can infer that Congress did not intend to exempt claims under the ADA and Rehab Act from the modified *de novo* standard. *See Ankenbrandt v. Richards*, 504 U. S. 689, 700 (1992) (when Congress legislates, courts can presume it had knowledge of courts' interpretations of the statute).

### B. Right To A Fair And Impartial Hearing

As part of their motion, Parents seek a trial *de novo* or a new due process hearing pursuant to Section 1983. That is the remedy that they seek in their Complaint, as well. In effect, then, they ask the Court to rule as a matter of law that they will prevail (or have prevailed) on their Section 1983 claim. The Court cannot do so, for several reasons.

#### 1. Factual presumptions

Taking the District's denials as true, the Court must assume that the District's lawyers did not engage in the conduct about which Parents complain during the

8

due process hearing. Although the Court has the administrative record, that record does not permit the Court to determine that the District's counsel crossed the line from very aggressive litigation tactics to Constitutionally-impermissible conduct.

### 2. Viability of Section 1983 claim

#### a. Municipal liability

A plaintiff cannot hold a municipality liable under Section 1983 "for the constitutional torts of its employees by virtue of respondeat superior." *McGreevy v. Stroup*, 413 F. 3d 359, 367 (3d Cir. 2005). Instead, a plaintiff must plead and prove that the employee acted pursuant to a municipal policy, custom, or practice. *See Beck v. City of Pittsburgh*, 89 F. 3d 966, 971 (3d Cir. 1996). A municipality adopts a policy "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* A custom exists when municipal officials' practices are "so permanent and well-settled as to as to virtually constitute law." *Id.* To hold a municipality liable for its custom or practice, a plaintiff must show that (1) the decisionmaker had notice that a constitutional violation could occur, (2) the decisionmaker acted with deliberate indifference to this risk, and (3) there is a causal connection between the custom or policy and the violation of constitutional right. *See id.*

Even assuming that the District's counsel acted inappropriately during the administrative proceedings, Parents have not made any allegation to support a claim of municipal liability. They have not pointed to any District policy that

9

compelled the District's counsel to conduct the hearing the way they did. Nor have they pointed to some custom or practice on the part of the District's lawyers to engage in such conduct in any litigation, let alone in due process hearings. Indeed, it is not clear that Parents and their counsel would have a good faith basis to make such an allegation, particularly given that they appear to attribute the District's lawyers' conduct to animus towards this particular family. And, in the absence of an allegation of a policy, custom, or practice, Parents' Section 1983 claim against the District cannot succeed.

### b. Sufficiency of the allegations to state a Section 1983 claim

Parents' Section 1983 claim also fails because they have not alleged facts to establish that the District deprived them of due process." A fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U. S. 35, 46 (1975). The IDEA and its implementing regulations also guarantee the right to a fair and impartial hearing. *See* 34 C. F. R. § 300. 511; 22 Pa. Code § 14. 162. "[A]dministrative decisionmakers are presumed to be impartial, and only evidence of 'actual bias or a likelihood of bias' can support a due process claim." *Park v. Temple Univ.* , 757 F. App'x 102, 106 (3d Cir. 2018) (quoting *Matter of Seidman*, 37 F. 3d 911, 924–26 (3d Cir. 1994)).

At the outset, Parents fail to explain why the District, rather than the administrative adjudicative body, is the appropriate party to seek relief from for

10

the alleged procedural due process violations. Absent some allegation of a conspiracy between the adjudicative body and the opposing party, it remains unclear why an adversary is responsible for ensuring an adjudicative proceeding's fairness and impartiality. Rambo litigation tactics are improper, but it's up to the hearing officer to control the parties before her, to the extent she deems it necessary.

In any event, even assuming that Parents could assert a claim against the District for the District's counsel's conduct, not all improper trial conduct mandates a new trial. *See Fineman v. Armstrong World Indus. , Inc. ,* 980 F. 2d 171, 207 (3d Cir. 1992). In this case, the hearing officer noted that while the parties' conduct during the due process hearing "interfered with [her] ability to assess credibility," it "did not eradicate it." (ECF No. 1-1 at 10.) Indeed, she found both sides credible in certain instances and carefully explained which parties she considered credible and why. That record suggests that the Hearing Officer was able to wade through the muck and conduct a fair hearing. The hearing officer was in a better position than this Court to determine whether counsel's conduct prevented the conduct of a fair proceeding and to remedy any problems as they occurred. *See Fineman*, 980 F. 2d at 207 (trial judge is in better position to appraise the effect of improper conduct).

The position in which the hearing officer found herself—one with lawyers behaving badly—is not unfamiliar to the Court. Certainly, it makes it more difficult for the administration of justice. But it doesn't make it impossible, and nothing on

11

the record suggests that the District's counsel compromised the fundamental fairness and integrity of the proceeding, any more than a lawyer making aggressive, or even improper, arguments does in this Court.

## IV.     CONCLUSION

Parents have not shown that this case is different from other cases that come before the Court after a due process hearing before a hearing officer. The Court will therefore deny Plaintiffs' Motion for judgment on the pleadings. An appropriate Order follows

                          **BY THE COURT:**

                          */s/ Joshua D. Wolson*
                          **JOSHUA D. WOLSON, J.**

November 15, 2021